## DIXIE FIRE INS. CO. v. McADAMS.

### No. 15180.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 1, 1950.

Carrigan, Hoffman & Carrigan and Stanley C. Kirk, Wichita Falls, for appellant.

Allen, Locke & Kouri, Wichita Falls, for appellee.

SPEER, Justice.

Dixie Fire Insurance Company has appealed from an adverse judgment entered

on a jury's verdict in a suit by Ben C. Mc-Adams on a Texas standard fire insurance policy for $1,000, alleged to cover "household goods" destroyed by fire on January 31, 1948.

Points of assigned error involve removal from the place where the alleged insured articles were located when the policy was issued, the nature and character of the articles claimed to have been covered by the policy and certain procedural matters.

The policy contract was plead by plaintiff in its entirety, and made a part of the petition. Premiums were paid and the contract was effective at the time of the fire. Appellant had prompt notice of the loss after it occurred and denied liability because the alleged covered articles had been removed from the place where they were when insured without notice to the company. Hence, formal proof of loss by the insured is not involved in this suit.

The policy covered appellee's "household goods" located in a described house at 1822 Ninth Street, Wichita Falls, Texas. They had been removed to and placed in storage at 508 Ohio Street in the same city, where they were later destroyed by fire. The policy covers "only the property described and located as provided hereon."

Points one and two challenge the judgment as entered because: (1) The court should have granted appellant's requested peremptory instruction to the jury, and having refused, it should have granted its motion for judgment non obstante veredicto, based upon the same reasons presented in its motion for an instructed verdict; and (2) the testimony was insufficient to support a verdict and judgment thereon for appellee.

The basis for a requested peremptory instruction was that the undisputed evidence shows the goods were destroyed at a place other than where the goods were located when the policy was issued.

Whether or not appellee had notified appellant of the removal of the goods to the place where they were destroyed was strongly contested by appellant and the testimony on the point is hopelessly conflicting. Appellee testified he notified the agency that issued the policy, once that he contemplated moving the goods to another location, and later notified it that he would move them to the location at which they were destroyed. Representatives of the agency admit the first notice of a possible removal and say that when appellee told them of his contemplated move, they advised him to let them know when he decided to do so and they would make the necessary transfer. They denied appellee's claim that he later told them he was moving the goods to the Ohio Street number for storage. Appellee also testified that he wrote the appellant company that he was moving the goods to the place where they were later destroyed but never had a reply to his letter.

The court submitted to the jury a single special issue inquiring in effect if appellee notified appellant of his intention of removing the goods to the place of storage at the Ohio Street number; the jury answered "Yes."

It is needless to cite authorities to support the rule that it is within the province of the jury to resolve the conflicts in the testimony if it can do so and to answer the issues according to the preponderance of the testimony. Further, that when this is done, if there is competent testimony to support the verdict, appellate courts will ordinarily not disturb it. In this case the testimony of appellee, corroborated though slightly, was sufficient to support the jury's finding. It is quite apparent that no peremptory verdict for appellant should have been returned.

The third point asserts that no judgment should have been entered for appellee because the policy only covered "household goods" and the testimony discloses that only "wearing apparel" was destroyed and that such articles were not covered by the policy of insurance.

This point poses what is apparently a new question in this state in so far as the appellate decisions are concerned. Strangely enough, it seems that the specific question has never reached our appellate courts.

In arriving at an answer to the question of whether or not the policy of insurance

on "household goods" covered wearing apparel, we must look to certain elemental rules of law for the answer.

 The insurance policy, read as a whole in connection with the statutory law of the state and all necessary implications, constitutes the contract between the parties. It is the duty of the courts to construe contracts. If a contract is plain and unambiguous and not violative of public policy, the courts will enforce it as made.

The policy as written insured appellee against loss by fire in the named amount on "household goods" during a designated period. By way of explanation, the policy provides: "Household Goods—insurance on household goods shall include all personal property, usual to a residence, of the insured and his family." Counsel for both parties differ widely as to the meaning of the quoted language used. It seems to us there is ample room for such divergent views.

The testimony reveals without dispute that the articles claimed by appellee to be covered by the policy were those he kept and maintained in his apartment room during the life of the policy, were on hand at the time of the fire and consisted of silverware, cooking utensils, pressure cooker, dishes, framed pictures, pillows, quilts, blankets, curtains and various kinds of towels, sheets, bed spreads, a trunk and many articles of wearing apparel. An itemized list with values of each was in evidence and a decided majority of the total value was for wearing apparel. Were the articles as a whole covered by the policy on "household goods" is the question for us to answer.

The policy sued on was issued November 15, 1947 for a period of three years. All premiums were paid; and the fire occurred on January 31, 1948. Appellant makes no contention that appellee fraudulently or negligently made any misrepresentations, warranties or guaranties to it as to the nature, character or quantity of the articles claimed by him to be covered by the policy.

 In this case the appellant, who prepared and issued the policy, was not content with the language by which it insured appellee's property, simply describing it as "household goods" but undertook to define or explain what should be deemed "household goods" in the language above set out. In such explanation, they in effect say "all personal property, usual to a residence, of the insured and his family, shall be deemed household goods." Considering the clauses used in the sentence in their most common acceptation, assuredly the articles enumerated by appellee are personal property. Then we may inquire is such property "usual to a residence of the insured and his family?" The word "residence" may have different meanings when applied to different facts and circumstances, but as applicable in this case we think it means "The place where one actually has his home." (Webster's Collegiate Dictionary.) Bearing this definition in mind, then were the insured articles usual to the residence or home of appellee? Even if appellee had not testified that he had them in his home, we think we would do no violence to the record if we were to take judicial knowledge of the fact that a person usually keeps his wearing apparel in his residence, i. e., his home. The definition or explanation in the policy relied upon by both parties does not stipulate that to be "household goods" wearing apparel must be kept in the home at all times, but simply says by this element of the definition that it is sufficient if they are "usual to a residence of the insured and his family." To us it seems absurd to say that wearing apparel is not usual to one's residence.

It is difficult for us to see upon what theory appellant could successfully contend that many of the enumerated articles involved here are not "household goods" more especially those articles which could not be classed as wearing apparel; yet it seems to draw no distinction in discussing the point here under consideration.

To support its contention that the policy covering "household goods" does not include wearing apparel, appellant cites such cases as Smith v. Findley, 34 Kan. 316, 8 P. 871; In re Kimball's Will, 20 R.I. 619, 40 A. 847; Larsen v. Oregon Short Line Ry. Co., 38 Utah 130, 110 P. 983; In re Patterson's Estate, 69 S.D. 374, 10 N.W.2d 754,

149 A.L.R. 965. Some of the cited cases involved classification of articles bearing different freight rates, neither of which draws a distinction between household goods and wearing apparel; while others involved construction of wills, holding that fur coats, clothing, etc., did not pass under a devise of "household furnishings" but belonged to the residue of the estate. The cited cases are easily distinguishable from the contractual rights of the parties in the instant case, more especially when the policy contract is construed under the rules which we believe to be applicable in this particular case.

▮ It is our belief and we so hold that under this record as a whole the policy of insurance covered appellee's property set out in the testimony, all of which was indisputably destroyed by fire.

Fourth point assigns error in the court's refusal to permit appellant to withdraw its announcement of "ready" and to postpone the trial at a time when it claimed surprise at the offering of testimony by appellee that he had given written notice to the defendant company of the removal of the insured property from the location stated in the policy to the place of storage, for lack of pleadings by the appellee to that effect.

▮ We have already pointed out that the policy was fully pleaded and introduced in evidence by appellee. The petition clearly reveals that the goods were not destroyed at the place named in the policy. Appellee alleged substantially that he had done each and every act requisite to fixing appellant's liability under the terms of the policy. No special exception was presented to the sufficiency of the pleadings in this or any other respect. Although the pleadings may have been objectionable as containing conclusions of the pleader, appellant waived such defects by not excepting thereto. Rule 90, Texas Rules of Civil Procedure. When payment was demanded, appellant denied liability upon the ground that the goods were not destroyed at the place where the policy contract insured them. In its answer appellant alleged that the goods had been removed from the location mentioned in the policy to the Ohio Street address where they were destroyed "without the knowledge or consent of the defendant company and in violation of the terms of said policy with respect to the location of the household goods described therein." In reality there is no provision in the policy obligating the insured to notify the insurer that he has or will remove the property to another location, but the testimony shows that the rate or premium per $100 is approximately double at the Ohio Street location of such premium at the place where the goods were described to have been located at the time the policy was issued. No additional premium was ever demanded of appellee. Appellant contends that it did not know of the removal. The jury found otherwise.

Under the conditions above outlined, we think appellant could not sustain a motion of surprise at whatever means appellee employed to prove that he had complied with every requisite required of him to establish liability and to disprove appellant's allegations of removal without its knowledge and consent. Appellant could scarcely have expected less than an effort to introduce proof of what it now complains was a surprise to it.

Fifth point assigns as error the overruling of appellant's objections to the testimony of appellee as to value of the several items of his destroyed goods, "because he was not shown to be qualified to place a value thereon."

Appellee testified substantially that he knew the value of his goods and the values given by him were conservative; that he was familiar with the means by which dealers in such secondhand articles fixed values and operated as secondhand merchandise concerns; he estimated the original cost and gave the approximate date of purchase, the price paid and the nature of use, and also said many of the articles could not be replaced at the same prices paid by him at the time of trial.

▮ It has long been the settled rule in this state that value to the owner of damaged or destroyed secondhand goods, including furniture and wearing apparel, is the difference in their actual value just

prior to and just after the injury. If the owner can furnish to the trier of the facts data from which such losses may be fairly assessed, the testimony is admissible. The witness need not necessarily be what is sometimes denominated an expert in such matters. It is the further rule that even if a party erroneously alleges the measure of his damages and the competent testimony reveals the proper measure, the court may apply the latter. Tubbs v. American Transfer & Storage Co., Tex.Civ.App., 297 S.W. 670, writ refused; Wutke v. Yolton, Tex.Civ.App., 71 S.W.2d 549, writ refused, and cases there cited.

We conclude that no error is shown in this record for which a reversal should be had, and it is our order that the judgment of the trial court be affirmed. Affirmed.